FOR THE

## COUNTY OF CALEDONIA.

MARCH TERM, 1845.

---

PRESENT.

Hon. STEPHEN ROYCE,
Hon. ISAAC F. REDFIELD, }Assistant Judges.
Hon. WILLIAM HEBARD,

---

## McLean Marshall *v.* Nehemiah H. Joy.

If an attorney, having a demand entrusted to him for collection, fraudulently deceive his client in reference to the responsibility of the debtor and the value of the demand, and thereby prevail upon the client to sell to him the demand for less than the amount due upon it, and the attorney subsequently collect the whole amount of the demand, he will not be liable to refund to the debtor the amount received by him above the amount paid by him to the client ; but he will be liable to the client therefor.

Indebitatus Assumpsit for money had and received. Plea, the general issue, and trial by jury.

On trial, the plaintiff gave evidence tending to prove, that, in 1842, while the bankrupt law of 1841 was in force, he applied to the

defendant, who was an attorney at law, in regard to making application for a discharge under that law; that, after some consultation, the plaintiff concluded to, and did, hire the defendant to buy up the demands against him at a discount, for which service he was to pay the defendant $25,00; and that for this purpose the plaintiff made out a schedule of his creditors, which it was understood the defendant should take, and show to the principal creditors, to induce them to believe that the plaintiff was about to commence proceedings under the bankrupt law, and by this means induce them to sell their demands, or receive payment of them at a discount. The testimony also tended to show that the plaintiff was not of ability to pay all his debts.

It appeared, also, that Peter McLaughlin was one of the principal creditors,—his debt exceeding $200; that a suit had been commenced upon this demand by the defendant, as attorney for McLaughlin, upon which he had caused the real estate of the plaintiff to be attached; that the defendant had the care of this claim, for collection; and that the defendant told the plaintiff, at the time the arrangement was made between them, that he did not know how he should get along with the McLaughlin claim, but that he thought, that, by means of the schedule, and by appearing to McLaughlin to be faithful to him, he could make him believe that he would not get much, and thus induce him to make a considerable discount on his debt. It appeared, also, that the defendant applied to McLaughlin, for the purpose of buying his demand, and represented to him that the plaintiff was about going into bankruptcy, and that the attachment would thereby be dissolved, and that he would probably get little, or nothing; that the defendant also applied to one Low, who had a demand in the same situation against the plaintiff, to assist him in buying McLaughlin's demand at a discount, saying that McLaughlin would rely upon what he, Low, should tell him, and that he, defendant, did not *believe* that the attachment would be dissolved by the application in bankruptcy, but wishing Low to represent to McLaughlin that it would be dissolved thereby; that the defendant, at this time, offered to allow Low one half of what could be saved by buying McLaughlin's claim; that Low declined entering into the arrangement, but did finally, after much importunity on the part of the defendant, consent not to expose the defendant's scheme to

McLaughlin,—though he did subsequently advise McLaughlin not to sell his demand for less than its full amount, but did not inform him of the defendant's scheme; and that the defendant did finally, by great importunity and perseverance, induce McLaughlin to sell and assign to him his claim against the plaintiff for one hundred dollars.

It farther appeared, from the testimony, that the plaintiff sold the land attached to one Ricker, subject to the attachments of McLaughlin and Low, and left the country; and that Ricker paid both those debts in full to the defendant.

The plaintiff requested the court to charge the jury, that, though they should find that the defendant did commit a fraud on McLaughlin, in the purchase of his demand, yet, if the plaintiff did not participate in it, he might recover in this action all that the defendant received of Ricker, more than he paid McLaughlin.

But the court charged the jury, in substance, that, if the defendant purchased the demand of McLaughlin by betraying the just duty and obligation of an attorney to represent to his client the true state of his case, as he believed it to be, in the manner alluded to in the evidence, and by representing the state of his demand to be precarious and worthless, when he did not so consider it, the contract of purchase was void, and the defendant could not retain what he received of Ricker in payment of the demand, but might be compelled to pay the same to McLaughlin; and that in that case the plaintiff could not recover, whether he was conusant of the fraud, or not.

The jury returned a verdict for the *defendant*. *Exceptions* by plaintiff.

*A. Underwood* for plaintiff.

*Farr & Leslie* for defendant.

The opinion of the court was delivered by

HEBARD, J. 1. Has the defendant money in his hands, which he cannot equitably retain? That must depend upon the manner of his obtaining it. If he obtained it by fraud and misrepresentation and circumvention, he cannot retain it. And that he did thus obtain it, as against McLaughlin, there cannot, from the facts detailed in the bill of exceptions, be any doubt.

2. Who, then, is entitled to this money,—amounting to one hundred dollars? The plaintiff owed it to McLaughlin, McLaughlin had it secured by attachment upon the plaintiff's land. This same land was sold, under an arrangement made by the defendant; and McLaughlin was induced to accept one half of his debt, in satisfaction of the whole,—which he would not have done, if he had not been imposed upon and deceived by the defendant, who was his attorney. Therefore it is, that the defendant's fraud has robbed McLaughlin, and not the plaintiff; as, if the defendant had been faithful and trustworthy to McLaughlin, he would have received his whole debt, instead of one half; so that the plaintiff is not affected by the defendant's *dishonesty,* one way, or the other.

Judgment affirmed.